**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Cause No.: 09-CR-2479-RCB** |
| | ) | |
| **DEREK WULF** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>SENTENCING MEMORANDUM;</u>
<u>REQUEST FOR SENTENCE OF PROBATION</u>**

COMES NOW Defendant Derek Wulf, by and through his attorney, Paul J. Rubino, who

hereby submits the following Sentencing Memorandum and Request for a Sentence of Probation

pursuant to 18 U.S.C. § 3553(a). A time-served and probation sentence would comply with all

the factors set forth in 18 U.S.C. § 3553(a), and would be no greater than necessary to comply

with the purposes of sentencing as set forth in the statute.

The Presentence Report (PSR) does not calculate a total offense level for Derek because

this is an assimilative crime for which there is no sufficiently analogous guideline level. The

guideline sentence is thus no more than the maximum allowed by statute. The assimilated New

Mexico state statute provides for a sentence from no incarceration up to a maximum of three

years. PSR at ¶¶ 54-56. Pursuant to 18 U.S.C. § 3561, Derek is eligible for probation for not

less than one year nor more than three years. PSR at ¶¶ 59-60.

**<u>APPLICABLE LAW</u>**

In order to decide on a proper sentence for any given defendant, the Court must first

"accurately calculate the applicable guideline range." *United States v. Muñoz-Nava*, 524

F.3d 1137, 1146 (10th Cir. 2008) (citing *Gall v. United States*, 128 S. Ct. 586, 596 (2007)).

In that calculation, the Court is charged with determining whether the defendant is entitled to any downward departures. *United States v. Marquez-Gonzalez*, 2008 WL 2371564, *5 (D.N.M. 2008, Browning, J.). Departure factors can be used in determining whether a variance is warranted, even if the court does not grant a downward departure. *United States v. Eriacho*, 2007 WL 6364848, *4 (D.N.M. 2007) (Browning, J.). "After considering the correct guideline range, the district court must then consider all of the §3553(a) factors to determine the appropriate sentence." *Muñoz-Nava*, 524 F.3d at 1146 (citing *Gall*).

In Derek's case, an individualized assessment of applicable grounds for departure under the guidelines and all the §3553(a) factors indicate that a sentence of incarceration would be greater than necessary to comply with the statutory purposes of sentencing. These sentencing purposes are (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (2) to afford adequate deterrence to criminal conduct, (3) to protect the public from further crimes of the defendant, and (4) to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). To achieve these purposes, the statute instructs the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant. 18U.S.C.§3553(a)(1). Additionally, the "so-called parsimony provision...requires district courts to impose the minimum punishment needed to satisfy the purposes of sentencing which are just punishment, deterrence, protection of the public and rehabilitation of the defendant." *United States v. Santoya*, 493 F.Supp.2d 1075, 1077 (E.D. Wisc. 2007).

## **GROUNDS FOR LENIENCY**

Military Service

Although the Sentencing Guidelines provide that, "Military . . . service [is] not ordinarily relevant in determining whether a departure is warranted," U.S.S.G.§ 5H1.11, it is respectfully submitted that Derek Wulf's military service warrants consideration.

Derek Wulf has served in the United States Air Force since 1994, and has been deployed overseas. He has received numerous medals, ribbons, and achievement awards, and remains on active duty. As the Court stated in *United States v. Pipich*, 688 F. Supp.191 (D. Md. 1988):

> This Court is of the opinion that a person's military record is a relevant factor to be considered at sentencing, because it reflects the nature and extent of that person's performance of one of the highest duties of citizenship. An exemplary military record, such as that possessed by this defendant, demonstrates that the person has displayed attributes of courage, loyalty, and personal sacrifice that others in society have not. Americans have historically held a veteran with a distinguished record of military service in high esteem. This is part of the American tradition of respect for the citizen-soldier, going back to the War of Independence. This American tradition is itself the descendant of the far more ancient tradition of the noble Romans, as exemplified by Cincinnatus.

It is respectfully submitted that Derek's service to his country is a mitigating factor that this Court should take into account in arriving at the appropriate sentence in this matter.

### 18 U.S.C. § 3553(a) FACTORS

Nature and circumstances of the offense.

Derek Wulf pled guilty to the assimilated charge of Abuse of a Child Not Resulting in Death as per NMSA ¶¶ 30-6-1(D)(1) and (2) and (E). As set forth in ¶ 8 in the plea agreement, Derek admits that the conduct giving rise to the charge arose from his failure to adequately monitor and follow up on his daughter Brandi's health care and nutritional needs. After attending the trial of his ex-wife, Derek realized that he reasonably should have known that neither he nor his ex-wife were adequately ensuring that Brandi's medical appointments were being made and kept and that her special nutritional needs were being met.

Shortly after her birth, Brandi Wulf experienced health growth and digestive problems. She was seen by numerous health care providers and specialists in the U.S. military health care system who pursued several theories of what caused her problems but no final diagnosis was ever made.

From February 2005 through January 2006, Derek lived on Holloman Air Force Base in Alamogordo, New Mexico together with his wife Rebecca Wulf and his daughter Brandi. Derek was the homemaker. He did the cooking, cleaning, and grocery shopping. He attended to Brandi and her medical appointments and her unique diet needs.

TDY is a military acronym for temporary duty assignment. Military personnel are often needed at a military installation other than the one they are currently posted to and when this happens the command they are assigned to lends them to the command where they are needed. On January 17, 2006, Derek went TDY from Holloman Air Force Base in New Mexico to an Air Force Base in Langley, Virginia. Derek is a computer specialist for the Air Force. In January of 2006, Langley, Virginia needed to install computer software for the F-22 fighter jet. This job required a special skill set that only a few people in the Air Force possessed. Derek was one of those few. When Langley put out a call for people of Derek's expertise to come to Langley on TDY to perform this software job the notice came to Derek's command at Holloman. Derek's command knew that Derek was one of the few persons with the needed expertise and the decision was made that Holloman could get by without Derek for the time he was needed at Langley. Derek thereupon applied for the TDY to Langley.

TDY assignments are expected of military personnel and they are expected to volunteer when needed for such assignments. As set forth in the mitigation materials (page 14 of the social history), the Chief Master Sergeant to whom Derek reported in January 2006 has explained to the

mitigation specialist that even though it is called volunteering airmen do not actually have a choice about accepting a TDY assignment. Chief Master Sergeant Jon Castro explained that when Air Force personnel have special knowledge, experience and training they are expected to use that knowledge, experience and training wherever and whenever it is needed. This means you go when and where you are needed and you are expected to volunteer to go when you are needed. Moreover, if you did not volunteer then you are ordered to go. If you don't volunteer, you are considered to not be a team player, you are deemed to not be carrying your weight, and ultimately this affects your career advancement. As Derek explained during his plea hearing he would have been "volun-told" if he did not volunteer. (Doc.: 58: Plea hearing transcript pgs. 18 and 19). Derek did not purposefully seek out a TDY assignment so as to run away from home to get a break from the obligations of being a father and husband. It was the Air Force's need for Derek's special skill set which gave rise to his TDY in January of 2006.

Derek went on TDY to Langley and left Brandi in the care of her mother Rebecca at the family home at Holloman Air Force Base. Derek had left home on TDY before and there had been no prior problems with Rebecca taking over the lead in caring for Brandi. Nine days after being posted to Langley, Virginia Derek was called home to Holloman Air Force Base because Brandi had died.

After being notified of Brandi's death, Derek immediately returned to Holloman and cooperated fully with military law enforcement agents and FBI agents. He was interviewed several times and during one interview, in response to leading questions, admitted that escaping from the drudgery of being the homemaker and care giver was a welcome bonus to being posted TDY but it was not the reason why he went TDY to Langley, Virginia.

During the plea colloquy, the Court pointedly questioned Derek about his reasons for

pleading to negligent child abuse and if he was concerned that Brandi would not receive the necessary care from Rebecca that she received from him while he was posted away from home. In his responses to this questioning, Derek stated that (1) he thought that Rebecca would pick up the slack and appropriately care for Brandi while he was gone, (2) hindsight has shown him that he should have known that Rebecca would or could not capably care for Brandi, (3) hindsight has shown him that he should have known to keep pushing the military medical system to diagnose Brandi's problem, and (4) hindsight has shown him that he should have known to seek mental health care for Rebecca.

History and Characteristics of the Defendant

The Court has previously authorized a mitigation specialist to provide an in-depth investigation into Derek's personal history. That investigation's report has been submitted to the Court, the prosecution and Probation. Probation has redisclosed the PSR incorporating the mitigation materials. Since the entirety of the mitigation specialist's detailed findings have been submitted to the Court, Probation and the prosecution, the following personal history of Derek will be a brief overview:

Derek's parents divorced when he was in 7th grade. His mother moved out and he and his younger brother remained in the house with their father. Derek and his brother visited their mother on weekends for about six months until his father decided that the boys no longer needed to visit her. After that, Derek would only see his mother intermittently and it would often be six months between visits. Derek has mentally blocked out the events and aftermath of the divorce. Derek withdrew into himself. He did not talk much to anyone during this time, he began skipping school and his grades went down. Derek worked during high school and upon graduating joined the U. S. Air Force. The Air Force has trained Derek as a computer specialist.

Derek's father was a strict disciplinarian. He and many of Derek's uncles have military service backgrounds. Derek was raised in a household where his father insisted upon cleanliness and orderliness and controlled cooking, cleaning and shopping. One of the reasons to enter military service was to leave his stressful upbringing behind and get away from his father and start a new life. At this time, he became estranged from his father and this gave rise to a period of about a year where they did not speak.

The Court is in an excellent position to evaluate Derek's life because in addition to the PSR it has the mitigation specialist materials and his military records. A review of these documents reveal that Derek is an exemplary airman, a law abiding citizen and a responsible parent. Derek has no criminal history. No juvenile record. No adult record. No traffic offenses.

Derek's seventeen years in the Air Force have been a record of outstanding service. He is a computer specialist with top level security clearances. He is entrusted with our nation's military computer secrets and is currently the NCO in charge of millions of dollars of aircraft maintenance systems. His military fitness reports have been consistently excellent. He has been consistently recommended for promotion and been promoted ahead of his peers. He has numerous citations for being an effective leader, for an unmatched devotion to duty and for exceptional person/professional conduct. There is not a single notation in his military records that is derogatory. His superiors have stated that they are hopeful that Derek will be able to remain in the Air Force.

In addition to Brandi, Derek has a daughter Acadia from his first marriage to Lisa Ross. The terms and conditions of his pretrial release preclude him from spending time alone with Acadia and this, in addition to the geographical distance between them, has been an impediment to sustaining the father-daughter relationship. But Derek has demonstrated maturity and poise in

dealing with these obstacles to fatherhood. He stays in contact with Acadia via telephone and online social media and his ex-wife Lisa allows him to reside in her home when he travels to visit Acadia about every six to eight weeks. Derek has never failed to fulfill his child support obligations and he has a very good relationship with his ex-wife and her present husband.

Derek's Air Force health records show treatment for an obsessive-compulsive disorder. Derek feels that this personality trait comes from his father and it is why he is an organized person and somewhat of a perfectionist. However, this personality trait has not prevented exemplary military service and one may even speculate that organization and perfection are traits needed in a military computer software specialist. Air Force medical records also show treatment for anxiety and bereavement following Brandi's death and his divorce from Rebecca.

Since being released to pretrial services supervision in 2007, Derek has not had a single violation of pretrial release conditions.

<u>The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide for just punishment, and to protect the public</u>

No violence, drugs or alcohol were involved in the offense that brings Derek before the Court. Derek has no criminal history. He has been out on bond on conditions of release since 2007 and during this time not a single incident of misbehavior. He has always led a law abiding life. A Court can consider this when imposing a sentence. *Muñoz-Nava*, 524 F.3d at 1148-49.

<u>A Time served Sentence Coupled with Probation is Sufficient Punishment</u>

A probationary sentence is sufficient punishment for Derek and it is proper for this Court to consider a non-incarceration sentence. The Supreme Court has rejected the conclusion that probation "lies outside the range of choice dictated by the facts of this case" because "§ 3553(a)(3) directs the judge to consider sentences other than imprisonment." *Gall v. United*

*States*, 128 S. Ct.586, 602 & n.11 (2007). "Home detention and probation can be severe punishments, hugely restrictive of liberty, highly effective in the determent of crime and amply retributive." *United States v. Coughlin*, 2008 WL 313099, *5 (W.D. Ark. 2008). The Supreme Court recognized in *Gall* that a sentence of probation is "a substantial restriction of freedom." 128 S.Ct. t 595 when it observed that: custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty.... Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking.... Most probationers are also subject to individual "special conditions" imposed by the court. A term of probation will require Derek to continue his good behavior and ensure that he will suffer consequences if he does not. *See Muñoz-Nava*, 524 F.3d at 1149.

BASED UPON THE FORGOING, DEREK WULF respectfully requests the Court to grant the relief requested herein and find that a sentence of probation coupled with the time served before release to pretrial supervision is appropriate in this case.

Respectfully Submitted,

*Electronically Submitted*
Paul J. Rubino
Attorney for Defendant Derek Wulf
5501 Superstition Drive
Las Cruces, NM 88011
575-647-8433

**CERTIFICATE OF SERVICE**
I hereby certify that a true and accurate copy of the foregoing pleading was served upon

the interested parties herein via the Court's CM/ECF electronic filing system.

Respectfully Submitted,

*Electronically Submitted*

Paul J. Rubino
Attorney for Defendant Derek Wulf
5501 Superstition Drive
Las Cruces, NM  88011
575-647-8433